**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

POWER TOOLS AND SUPPLY,

    Plaintiff,

vs                                                    Case No: 05-73615
                                                      Honorable Victoria A. Roberts

COOPER POWER TOOLS,

    Defendant.
_____/

## ORDER

### I.    INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Counterclaim in Reply. Defendant's motion is **GRANTED IN PART and DENIED IN PART**.

### II.    BACKGROUND

This action arises from distributorship contracts between Plaintiff Power Tools & Supply, Inc. ("PTS") and Defendant Cooper Power Tools, Inc. ("Cooper"). In June and July 1999, PTS and Cooper entered two contracts (the "Distributor" and "Apex") which allowed PTS to act as the non-exclusive distributor for certain of Cooper's products in Michigan. Both contracts include a termination provision which permits either party to terminate without cause with 30 days (the Distributor) or 6 months (the Apex) notice.

In August 2005, PTS filed an action against Cooper in Oakland County Circuit Court alleging, *inter alia*, that Cooper entered into a distributorship contract with one of

PTS' competitors which breached their contract and violated a number of state laws. Cooper removed the action to this Court.

Despite the pending action, the parties maintained their contractual relationship. However, on May 2, 2006, Cooper sent written notice to PTS terminating the Distributor contract in 60 days and terminating the Apex agreement in 6 months.

In October 2006, Cooper filed a Counterclaim alleging several state law claims, based on PTS' alleged failure to pay for goods it received. In November 2006, PTS filed an Answer and Affirmative Defenses to Cooper's Counterclaim, and its own Counterclaim and Demand for Jury Trial ("Counterclaim in Reply").[1] In the Counterclaim in Reply, PTS alleges that Cooper's termination of the distributorship contracts and alleged solicitation of PTS employees constitutes breach of contract, violation of the South Carolina Unfair Trade Practice Act ("SCUPTA"), S.C. Code §39-5-10, *et seq.*, and breach of fiduciary duty.

Cooper asserts that each of PTS' counterclaims fails as a matter of law and must be dismissed pursuant to FRCP 12(b)(6).

## III. STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) Motion, the trial court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Because a Rule

---

[1] Magistrate Judge Paul J. Komives entered an Opinion and Order on April 20, 2007 holding that Plaintiff's Counterclaim in Reply was properly filed as part of its Answer to Cooper's counterclaims. But, Judge Komives declined to express an opinion on whether the allegations state a claim upon which relief may be granted.

12(b)(6) motion rests upon the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of the witnesses." *Miller*, 50 F.3d at 377.  The court should deny a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v Gibson,* 355 U.S. 41, 45-46 (1957).  *See also Gazette*, 41 F.3d at 1064; *Miller*, 50 F.3d at 377. "While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  Rather, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *DeLorean*, 991 F.2d at 1240 (citations omitted).

## IV.   APPLICABLE LAW AND ANALYSIS

Defendant asserts that South Carolina law applies to each of PTS' counterclaims, pursuant to a choice of law provision in the Distributor and Apex agreements.  Notably, however, the Apex agreement attached to Defendant's brief actually states that all questions concerning the validity, operation and performance of the contract shall be governed by the laws of Ohio.  Def. Exh. 2 at ¶VIII(D).  Yet, Plaintiff does not dispute Defendant's assertion that South Carolina law governs both contracts.  For purposes of this motion, it is presumed that South Carolina law, indeed, applies to both contracts.

### A.   Breach of Contract

Plaintiff's allegations are set forth in the Counterclaim in Reply and, by reference,

in the Fourth Amended Complaint. The allegations are presumed true.

Plaintiff asserts in its Counterclaim in Reply that Defendant terminated the distributorship contracts for multiple reasons: 1) in retaliation for Plaintiff's filing of this action; 2) to prevent competition by PTS and fix the prices offered for Defendant's products (to one of its buyers--DaimlerChrysler); and 3) to put PTS out of business and eliminate competition. Counterclaim in Reply at ¶¶27, 29, 30. Plaintiff's latter two allegations are based in part on Plaintiff's assertion that Defendant induced it and other distributors not to bid on an exclusive nationwide contract with DaimlerChrysler.

For several years up to mid-2005, Plaintiff sold Defendant's tools to DaimlerChrysler in Michigan. In April 2005, DaimlerChrysler solicited bids for a single supplier for its needs throughout the United States and Canada. Plaintiff informed Defendant that it intended to submit a bid. However, Defendant informed Plaintiff that it would not permit any of its distributors to independently submit a bid for the national contract (apparently because it would violate the territorial limits in their contracts with Defendant). Defendant threatened not to supply tools to any distributor that submitted a bid on its own. Ostensibly to protect its distributors, Defendant promised to submit a single bid on the national contract. Based on these representations, Plaintiff refrained.

However, rather than submitting a competitive bid on behalf of all of its distributors, Plaintiff alleges that Defendant took steps as part of a settlement to ensure that another company with whom it was engaged in litigation (Kramer Air Tools Sales and Service, Inc.) secured the contract with DaimlerChrysler. Counterclaim in Reply at ¶15-19. Specifically, Defendant submitted a bid which quoted prices 30% higher than DaimlerChrysler was paying at the time. Additionally, as part of a settlement, Defendant

4

granted Kramer the right to purchase Defendant's products at the same discount offered to other distributors and to distribute Defendant's products nationwide if Kramer became the exclusive supplier to a factory or series of factories.

Kramer was ultimately awarded DaimlerChrysler's nationwide contract. Kramer exclusively supplied DaimlerChrysler with goods purchased from Defendant at a discounted price. Counterclaim in Reply at ¶¶10-22.

Defendant's alleged deliberate sabotage of the DaimlerChrysler bid occurred approximately one year before it cancelled Plaintiff's contract. But, Plaintiff alleges without explanation that the contracts were terminated to "prevent competition by PTS," "fix the prices that DamilerChrysler [sic] was paying for Cooper tools [sic] higher than they would have been had PTS's attempts to sell directly to DamilerChrysler [sic] been successful," and "to put PTS out of business to eliminate competition." Counterclaim in Reply at ¶¶29-30. Plaintiff says Defendant subsequently solicited Plaintiff's employees to work for Defendant.

In its brief, Plaintiff puts its post-bid allegations into context. Plaintiff asserts that Defendant strategically timed termination of the larger Distributor contract to prevent Plaintiff from soliciting the DaimlerChrysler contract from under Kramer:

> On May 2, 2006, Cooper gave PTS 60 days notice to terminate the larger volume distributor contract. PTS believes it was no coincidence that Cooper gave notice of the termination so it would be effective July 1, 2006. That date was the one year anniversary of the Kramer - Chrysler contract. Even since Chrysler gave the contract to Kramer, PTS had been working hard to convince Chrysler to award the contract, or some portion of it, to PTS when the opportunity came up at the one-year anniversary. . . . By terminating Plaintiff's distribution contracts right on the anniversary date of the Kramer - Chrysler contract, Cooper ensured that Plaintiff would be unable to recover in time to make a run at the contract. Plaintiff did not have

5

> sufficient time between being notified of the termination and the actual termination to secure other sources of supply required for the contract.

Pl. br. at pp. 10-11. Plaintiff alleges that there was no other legitimate business reason to terminate the contracts because Plaintiff has consistently been one of Defendant's top ten distributors for the past fifteen years. Counterclaim in Reply at ¶26.

Defendant asserts that Plaintiff's claim fails as a matter of law because it is undisputed that Defendant terminated the Distributor and Apex contracts in accordance with their express terms by providing the requisite notice. Defendant further asserts that Plaintiff's allegations of inducement and price fixing are insufficient to state a claim because South Carolina does not recognize a breach of an implied covenant of good faith when a party to a contract acts in accordance with its terms, such as here where the contracts were terminated in accordance with their terms.

Plaintiff asserts that it may pursue a cause of action for breach of contract despite the termination clauses because South Carolina allows such a claim when a contract was terminated contrary to "equity and good conscience."[2] Therefore, Plaintiff contends that its allegations of inducement and price fixing are sufficient to state a claim.

Plaintiff sufficiently alleged breach of contract. Under South Carolina law, a breach of contract claim will lie for wrongful termination of a contract even if its terms

---

[2]Plaintiff also alleges that: 1) additional promises were made by Defendant regarding its right to exclusively supply products to DaimlerChrysler, and 2) the 30-day termination clause in the Distributor agreement was superceded by an addendum added in 2004 (the "Super D") which allowed Plaintiff to purchase products at a greater discount and provided that failure to comply with its terms would result in a 90-day suspension.

6

allow either party to terminate the agreement without cause if the contract was terminated contrary to "equity and good conscience." *Philadelphia Storage Battery Co. v Mutual Tire Stores*, 161 S.C. 487 (S.C. App. 1931). South Carolina has not precisely defined the type of conduct which satisfies this standard. But, federal courts interpreting South Carolina law hold that contract terminations which are without reasonable business justification and are arbitrary, coercive or malicious, are actionable. *See Richland Wholesale Liquors v Glenmore Distilleries Co.,* 818 F.2d 312, 316-317 (4th Cir. 1987); *Glaesner v Beck/Arnley Corp.,* 790 F.2d 384, 389 (4th Cir. 1986); *deTreville v Outboard Marine Corp.,* 439 F.2d 1099, 1100 (4th Cir. 1971); *Gaines W. Harrison & Sons, Inc. v J.I. Case Co.,* 180 F.Supp. 243, 254 (E.D. S.C. 1960).

Although perhaps not artfully pled, Plaintiff alleges that Defendant terminated the Distributor and Apex contracts without a reasonable justification and for a malicious purpose--to eliminate Plaintiff as a competitor. These allegations are sufficient to state an actionable claim for breach of contract under South Carolina law, despite the unilateral termination provisions.

### B. SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT

"Unfair methods of competition and unfair or deceptive acts or practices" in trade or commerce are unlawful under the South Carolina Unfair Trade Practice Act ("SCUPTA"). S.C. Code §39-5-20(a). "To recover in an action under the [SC]UTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Wright v Craft*, 371 S.C. 1, 23 (S.C. App. 2006).

Plaintiff alleges that Defendant's termination of the distributorship agreements and solicitation of its employees violates SCUPTA. Defendant asserts that termination of the distributorship agreement was not an unfair or deceptive act, and that Plaintiff cannot establish that either the termination or alleged solicitation of employees had an adverse impact on the public.

"An unfair trade practice has been defined as a practice which is offensive to the public policy or which is immoral, unethical, or oppressive." *deBondt v Carlton Motorcars, Inc.,* 342 S.C. 254, 269 (S.C. App. 2000). "Whether an act or practice is unfair or deceptive within the meaning of the [SC]UPTA depends upon the surrounding facts and the impact of the transaction on the marketplace." *Id*.

Defendant argues that its termination of the distributorship agreements does not constitute an unfair or deceptive act because the contracts were not wrongfully terminated and, in any event, even a wrongful termination is not sufficient to support a SCUPTA claim. Defendant is correct that breach of contract without more, even if intentional, is not sufficiently unfair or deceptive to satisfy the first element of a SCUPTA claim. *See Columbia East Associates v Bi-Lo, Inc.,* 299 S.C. 515, 522 (Ct. App. 1989). But, Plaintiff alleges more than breach of contract; Plaintiff additionally alleges that Defendant terminated the contract to prevent Plaintiff from competing for the DaimlerChrysler contract.

At least one court found that anticompetitive conduct constitutes an unfair or deceptive trade practice. In *E.B. Muller & Co. v FTC*, 142 F.2d 511 (6th Cir. 1944), the Sixth Circuit upheld the Federal Trade Commission's finding that the petitioners violated the Federal Trade Commission Act ("FTCA") by selling its products below cost and at a

8

loss in certain areas with a purpose to drive a competitor out of business. *See also Bostick Oil Co., Inc. v Michelin Tire Corp.,* 702 F.2d 1207 (4th Cir. 1983)(reversing district court's grant of directed verdict where plaintiff alleged that part of his distributorship was not renewed in furtherance of defendant's anticompetitive purposes--to prevent plaintiff from discounting products below the price defendant's other competitors sold them.).

*E.B. Mueller* did not involve a claim under the SCUPTA; it addressed an appeal of a Federal Trade Commission ("FTC") finding that the petitioner's trade practices violated the FTCA. The FTCA empowers and directs the FTC "to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. 45(a)(2). SCUPTA explicitly directs state courts to look to FTC and federal court decisions on violations of the FTCA for guidance in interpreting the proscription against "unfair methods of competition and unfair or deceptive acts or practices," *see* S.C. Code §39-5-20(b).[3]

Plaintiff's allegations are comparable to those in *E.B. Mueller*. This Plaintiff also alleges deliberate acts by Defendant to eliminate Plaintiff as a competitor. Specifically, Plaintiff alleges that Defendant induced distributors not to submit competitive bids to DaimlerChrysler, subsequently manipulated the bidding process to ensure that it would

---

[3] S.C. Code §39-5-20(b) states:

It is the intent of the legislature that in construing paragraph (a) of this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to § 5(a) (1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

be rejected in favor of Kramer (for whom Defendant was the supplier), and later terminated Plaintiff's distributorship (shutting off its supply of Defendant's products) so that Plaintiff could not effectively solicit DaimlerChrysler to consider it rather than Kramer for its future needs. Plaintiff adequately alleged that Defendant engaged in unfair or deceptive practices.

For the second element, "[p]laintiffs must allege and prove that the defendant's actions adversely affected the public interest." *Singleton v Stokes Motors, Inc.*, 358 S.C. 369, 379 (S.C. App. 2004). "An unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond [SCUPTA's] embrace." *Noack Enterprises, Inc. v Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 479 (S.C. App. 1986).

Plaintiff makes several allegations in an effort to satisfy its burden to establish that Cooper's termination of its distributorship had an adverse impact on the public interest. It contends that: (1) Cooper solicited its employees; (2) Cooper engaged in the activities described in the Complaint to undermine Plaintiff's business and eliminate Plaintiff as a competitor; and (3) Cooper's efforts were part of a price-fixing scheme. The Court finds that these allegations are insufficient to state a claim under SCUPTA that satisfies the public interest requirement.

Plaintiff offers no argument or authority which would support a finding that Defendant's alleged attempt to poach Plaintiff's employees had an adverse impact on the public. Indeed, the South Carolina Supreme Court in *Florence Paper Co. v Orphan*, 298 S.C. 210 (S.C. App. 1989), rejected a similar argument where plaintiff alleged that defendant, a former employee, solicited plaintiff's customers for a competing business.

Plaintiff's assertion that Cooper's purpose was to eliminate Plaintiff as a competitor and fix prices is also unavailing to satisfy the public impact requirement. The fact that customers will experience higher prices does not convert the dealings between these two private parties into a matter within the scope of SCUPTA. *See Wilson Group, Inc. v Quorum Health Resources, Inc.*, 880 F.Supp. 416 (D.S.C. 1995)(potentially higher consumer prices is too remote of a consequence to satisfy the public impact requirement); *Omni Outdoor Advertising, Inc. v Columbia Outdoor Advertising, Inc.,* 974 F.2d 502 (4th Cir. 1992)(*on rem*)(alleged inflated costs to consumers too speculative to establish adverse public impact, and plaintiff cannot rely upon damages to third parties).

Although not set forth as an allegation in its Counterclaim in Reply, Plaintiff argues in its brief that Cooper's actions are part of a price fixing scheme that could be continued or repeated.

"An impact on the public interest may be shown if the acts or practices have the potential for repetition." *Singleton*, 358 S.C. at 379. "The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely that they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair or deceptive acts." *Id*. "These are not the only means of showing the potential for repetition, however[;] . . . each case must be evaluated on its own merits.

Plaintiff not only makes no allegations to support either of these approaches, but it fails to set forth any allegations which demonstrate a potential for continued action. South Carolina courts repeatedly reject speculative claims of adverse public impact and require evidentiary proof of such effects. *See Florence*, *supra*; *Columbia East*

*Associates, supra.*

Where "there are no allegations in the complaint that suggest that any of the unfair acts or deceptive practices allegedly employed . . . might possibly recur," *Noack Enterprises,* 290 S.C. at 480, the Court has no alternative but to grant Cooper's motion to dismiss this claim.

### C. BREACH OF FIDUCIARY DUTY

"The term fiduciary implies that one party is in a superior position to the other and that such a position enables him to exercise influence over one who reposes special trust and confidence in him." *Burwell v South Carolina National Bank,* 288 S.C. 34, 40 (S.C. App. 1986). "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *Armstrong v Collins*, 366 S.C. 204, 221 (Ct. App. 2005)(*quoting Island Car Wash, Inc. v Norris*, 292 S.C. 595, 599 (Ct. App. 1987)).

A relationship must be more than casual to give rise to a fiduciary duty. *Id.* "[M]ere respect for another's judgment or trust in his character is usually not sufficient to establish such a relationship." *Burwell*, 288 S.C. at 40. But, South Carolina has not set precise boundaries for the types of relationships which qualify. *Armstrong*, 366 S.C. at 221. Rather, a court "must look to the particulars of the relationship between the parties." *Id* at 222. "The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party." *Burwell*, 288 S.C. at 40.

Plaintiff alleges that Defendant induced it not to bid for the DaimlerChrysler contract by promising to submit a single bid on Plaintiff and the other distributors' behalf, and by threatening not to supply any distributor who submitted an independent bid. Instead, however, Plaintiff says Defendant actually submitted an untenable bid which Defendant could reasonably expect would be rejected. The purpose of Defendant's alleged deliberate sabotage, says Plaintiff, was to pave the way for a preferred distributor, Kramer, to obtain an exclusive contract with DaimlerChrysler and use Defendant as the supplier. These allegations sufficiently state a claim for breach of fiduciary duty.

## IV. CONCLUSION

The SCUPTA counterclaim allegations cannot survive a 12(b)(6) motion. Plaintiff's breach of contract and breach of fiduciary duty claims are sufficiently stated to survive the motion. It is **GRANTED IN PART AND DENIED IN PART.**

**IT IS ORDERED.**

                                                                          /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: June 26, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 26, 2007.

S/Linda Vertriest
Deputy Clerk